UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| ELIAS RAMIREZ, MICHELLE TINIO RAMIREZ, and JAVIN T. OLSON, individually and on behalf of all others similarly situated, | No. |
| Plaintiffs | **JURY TRIAL DEMANDED** |
| v. | |
| FCA US LLC, a Delaware Limited Liability Company, | |
| Defendant. | |

## <u>CLASS ACTION COMPLAINT</u>

Plaintiffs Elias Ramirez, Michelle Tinio Ramirez (collectively "Elias and Michele Ramirez"), and Javin T. Olson, ("Olson") (collectively the "Plaintiffs"), on behalf of themselves and all others similarly situated, including a proposed Nationwide class and California and Massachusetts state classes, as more fully described below, allege the following based on personal knowledge as to their own acts and experiences and as to all other matters, based on the investigation of their counsel:

## I.    INTRODUCTION

1.    This consumer class action arises out of Defendant FCA US, LLC's ("FCA" or "Defendant") manufacture and sale of Chrysler Pacifica Hybrid Minivans, a/k/a Plug-In Hybrid Electric Vehicles or PHEVs, (the Defective Class Vehicles), that were uniformly and dangerously defective, which defect caused them to be prone to catching fire and even exploding, as more fully discussed in Part IV. B. hereafter (the "Hybrid Propulsion Defect").  Defendant FCA sold or caused to be sold such dangerously defective vehicles to consumers, including Plaintiffs, without disclosing their uniform and dangerous defect, respecting which Defendant has yet to remedy and has not yet disclosed its root cause though it appears that the defect is rooted in or connected to the vehicles' high voltage batteries.[1]

---

[1]    The high voltage batteries are made by LG Energy Solution ("LGES") – the same manufacturer of allegedly defective batteries causing fires in other vehicles such as the GM Bolt and Hyundai electric vehicles.

2.     Defendant FCA's actions have violated sacred obligations and duties of car manufacturers to both provide consumers with vehicles that are safe and to alert them to, or otherwise warn them of, vehicle defects that implicate serious safety issues and both accept the responsibility to fix or replace each such affected vehicle and absorb the cost to do so rather than requiring or forcing consumer owners of the Defective Class Vehicles to do so.

3.     Although Defendant has been aware of the serious safety risks of the Defective Class Vehicles arising from their dangerous defect, it failed to timely and adequately warn lessees and purchasers or replace or repair said vehicles.  Instead, Defendant FCA has instructed owners or lessees of the Defective Class Vehicles to refrain from plugging in their minivans – in other words charging them – and also to park their vehicles away from buildings or structures, or other vehicles.

4.     Plaintiffs and Class Member consumers have been forced into this unacceptable situation by reason of a defect in the hybrid propulsion system that has caused such vehicles to experience fires and even explosions.  There have already been no less than twelve (12) fires reported among the Chrysler PHEVs.

5.     Plaintiffs are informed and believe and thereupon allege that FCA knowingly concealed the Hybrid Propulsion Defect and its consequences from consumers, who were kept unaware that, despite ordinary and customary usage, their vehicle could ignite on fire and explode, with the potential to cause bodily harm and

injury, including death, to themselves and others, and cause property damage and even injury or death to vehicle passengers or harm to property – whether commercial or residential – where the vehicle is stored, even though the vehicle has been turned off and is parked.

6.      On February 11, 2022, and after receiving numerous complaints and reports of a dozen fires regarding the Defective Class Vehicles connected with the Hybrid Propulsion Defect since 2019, Defendant issued Recall No. 22V-077 (the "Recall") for said vehicles.  See NHTSA, Part 573 Safety Recall Report 22V-077 (February 11, 2022), attached as **Exhibit A** hereto.  But despite the Recall, Defendant currently offers no actual remedy for class members.  Instead, FCA is advising Plaintiffs and Class Members not to recharge their electric vehicles and park them away from structures and other vehicles. This is not a cure, nor a remedy, and further prejudices and harms consumers such as Plaintiffs Elias and Michelle Ramirez and Plaintiff Olson, who purchased their new Chrysler Plug-in Hybrid Electric Vehicles for their use and enjoyment.

7.      Because of FCA's breaches of implied warranties and its failure to act more quickly in disclosing and providing a remedy for the Hybrid Propulsion Defect, owners and lessees of Defective Class Vehicles are injured in fact, incurred damages, and suffered ascertainable losses in money and property.  Had Plaintiffs and the putative Class Members known of the Hybrid Propulsion Defect, then they would

not have purchased or leased those vehicles, would have paid substantially less for them, or would have purchased non-hybrid versions of the vehicles, which cost substantially less.  Fires in the Defective Class Vehicles also necessitate expensive repairs, car rentals, car payments, towing charges, property damage, time off work, loss of use and other miscellaneous costs.  Moreover, because of the Hybrid Propulsion Defect and FCA's concealment, the Defective Class Vehicles have a lower market value and are worth less than they otherwise would be.

8.    Plaintiffs bring this class action to redress FCA's misconduct. Plaintiffs seek damages and a repair under the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 23-1-2312, and state laws.

## II.    JURISDICTION AND VENUE

9.    This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more Class Members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one member of the class of plaintiffs and Defendant are citizens of different states. This court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

10.    This Court has specific personal jurisdiction over Defendant FCA because it is headquartered in Michigan. Defendant has purposefully availed itself

of the benefits and protections of the State of Michigan by continuously and systematically conducting substantial business in and from this judicial district, directing advertising and marketing materials to districts within Michigan, and intentionally and purposefully placing the Defective Class Vehicles into the stream of commerce within Michigan and throughout the United States with the expectation and intent that Michigan consumers, along with those of other states, would purchase them. Many thousands of Defective Class Vehicles have been sold in Michigan and are operated within this State and the judicial district.

11.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because FCA transacts business in this judicial district, is subject to personal jurisdiction in this judicial district, and therefore is deemed to be a citizen of this judicial district. Additionally, there are one or more authorized Michigan dealers within this judicial district, FCA has advertised in this judicial district, and FCA has received substantial revenue and profits from its sales and/or leasing of Defective Class Vehicles in this judicial district; therefore, a substantial and material part of the events and/or omissions giving rise to the claims occurred within this judicial district.

### III.    PARTIES

**A.    Plaintiffs**

**1.    Elias Ramirez and Michelle Tinio Ramirez**

12.     Plaintiffs and proposed class representatives Elias Ramirez and Michelle Tinio Ramirez are residents and citizens of Chula Vista, California. They purchased a new 2018 Chrysler Pacifica Plug-in Hybrid vehicle in July or August 2018 at Redlands Chrysler Dodge Jeep Ram in Redlands, California. The Chrysler Pacifica Plug-in Hybrid purchased by Plaintiffs Elias and Michelle Ramirez is a Defective Class Vehicle equipped with the Hybrid Propulsion Defect. Elias and Michelle Ramirez made the decision to purchase their Defective Class Vehicle after being aware of the uniform messaging by Defendant, via its marketing, advertisements, and representations regarding the safety and reliability of the Defective Class Vehicles, which induced and informed their purchase decision. Since purchasing their Defective Class Vehicle, Elias and Michelle Ramirez have noticed a burned metal smell when charging their vehicle and the floor of the vehicle has been unusually warm. Elias and Michelle Ramirez typically charge their vehicle in the garage with the factory standard charger supplied by the dealership at which they purchased the Defective Class Vehicle. Michelle Ramirez no longer feels comfortable driving the vehicle with their four children in the vehicle due to the risk of explosion and fire.

**2.     Javin T. Olson**

13.     Plaintiff and proposed class representative Javin T. Olson is a resident and citizen of Concord, Massachusetts. He purchased a new 2018 Chrysler Pacifica

Plug-in Hybrid vehicle on August 31, 2019 at the McGovern Chrysler Jeep Dodge Ram dealership located in Newton, Massachusetts. Plaintiff Olson's Chrysler Pacifica Plug-in Hybrid is a Defective Class Vehicle equipped with the Hybrid Propulsion Defect. Mr. Olson made the decision to purchase his Defective Class Vehicle (vehicle identification number 2C4RCIL787R175682) after being aware of the uniform messaging by Defendant, via its marketing, advertisements, and representations, regarding the safety and reliability of the Defective Class Vehicles, which induced and informed Plaintiff's purchase decision.

14.     Defendant widely disseminated throughout America statements assuring customers that the Defective Class Vehicles were the "most family friendly minivan in its class" and that "[y]our family's safety and security are what matters most." (**Exhibit B** hereto).

15.     Despite touting the safety, reliability, and dependability of the Defective Class Vehicles, neither Defendant nor its agents, dealers or representatives, disclosed to Plaintiffs the vehicles uniform defect.

16.     Plaintiffs have now been left with a dangerous and defective vehicle because of the Hybrid Propulsion Defect, which defect has diminished and shall continue to diminish the market value of the Defective Class Vehicles.

17.     Plaintiffs have been left with electric vehicles that they cannot charge, forcing him to pay for gas that is more expensive than the cost of electricity.

7

Plaintiffs' vehicles could catch fire at any time, creating an imminent risk of injury or property damage.

18.     Plaintiffs would not have purchased the vehicle, or would certainly have paid considerably less for it, had they known of the defect discussed herein.

**B.     Defendant**

19.     Defendant Fiat Chrysler Automobiles (FCA) US, LLC ("FCA"), formerly known as Chrysler Group, is a Delaware limited liability company organized and existing under the laws of the State of Delaware, and is wholly owned by Stellantis N.V., a Dutch corporation headquartered in Amsterdam, Netherlands. FCA's principal place of business and headquarters is at 1000 Chrysler Dr., Auburn Hills, MI 48326.

20.     At all times relevant herein, Defendant was engaging in the business of designing, manufacturing, construction, assembling, marketing, distributing, and selling automobiles and other motor vehicles and motor vehicle components in the United States.

21.     FCA offers passenger cars, utility vehicles, minivans, trucks, and commercial vans, as well as distributes automotive service parts and accessories. As the North American arm of Fiat Chrysler Automobiles, FCA US, LLC manufactures a range of vehicle under its Fiat and Chrysler brands, including Jeep, Ram, Dodge, Alfa Romeo, and Abarth at 45 plants in the United States and Mexico. It ships about

2.5 million vehicles every year. It also features its parent's trademarked MOPAR automobile parts and service brand which carries more than 500,000 parts, options, and accessories for vehicle customization.

22.     From its headquarters in Michigan, Defendant FCA marketed the Class Vehicles to consumers.

23.     FCA and/or its agents designed and manufactured the Defective Class Vehicles. FCA also developed and disseminated the owner's manuals and warranty booklets, advertisements, brochures, and other promotional materials relating to the Defective Class Vehicles, with the intent that such documents be purposely distributed throughout all fifty states. FCA is engaged in interstate commerce, selling vehicles through its network in every state of the United States.

24.     As further detailed below, FCA-authorized automobile dealerships act as FCA's agents in selling automobiles under the FCA name and disseminate vehicle information provided by FCA to customers. At all relevant times, FCA's dealerships served as its agents for motor vehicle repairs and warranty issues because they performed repairs, replacements, and adjustments covered by FCA's manufacturer warranty pursuant to the contracts between FCA and its more than 2,000 authorized dealerships nationwide.

## IV.   FACTUAL ALLEGATIONS

**A.    Defendant FCA – Possessing Decades of Auto Vehicle Design, Engineering and Manufacturing Experience – Sells Defective Class Vehicles Through Its Authorized Agents and Dealers**

25.    Every manufacturer of a motor vehicle to be sold to and/or driven by consumers is to produce and provide a safe vehicle that is free of dangerous defects. It was incumbent on FCA to do so, and, at a minimum, to warn consumers of any safety defect and replace such affected vehicles and/or appropriately repair any such defect whenever the manufacturer become aware that the vehicles it has manufactured and/or sold to consumers exposes them to serious safety issues by reason of a defect.

26.    The Defective Class Vehicles that were manufactured and sold by Defendant FCA were dangerously defective and prone to catching fire and exploding. Faced with such knowledge, Defendant did nothing for a material period of time to either warn owners or lessees or otherwise provide them with a true and effective remedy for the defect or replace their Defective Class Vehicles with one that was not defective.

27.    The Defective Class Vehicles contain a defect as more fully discussed in Part IV. B. hereafter which Plaintiffs are informed and believe and thereupon allege is referred to as the "Hybrid Propulsion Defect" within the hybrid propulsion system.

28.     Defendant FCA, formally known as Chrysler Group, LLC, has been in the business of designing, manufacturing, and selling cars for decades.  It has been engaged in the business of designing, manufacturing, constructing, assembling, marketing, distributing, and selling automobiles and other motor vehicles and motor vehicle components within the United States at all times material.

29.     FCA is the North American arm of Fiat Chrysler automobiles.  It manufactures various vehicles under the Fiat and Chrysler brands, including Jeep, Ram, Dodge, Alpha Romeo and Abarth at numerous plants throughout the United States, shipping approximately 2.5 million vehicles every year.  At all times material hereto, Defendant FCA marketed the class vehicles to consumers in the ordinary course of its business, it effects the sale of its vehicles through its agents, including FCA dealerships.  Plaintiffs are informed and believe and thereupon allege that FCA acknowledges that its authorized dealerships are its sales agents.  And its dealers have accepted that undertaking.  FCA controls authorized FCA dealers and acts as a principle in the FCA – dealership agency relationship.

30.     In that regard, FCA has the ability to terminate relationships with dealers at will, sells them vehicles that it manufacturers, for the dealers to then sell to the public, gives dealers the resources needed to sell such vehicles, and supervises them on a continuous and regular basis.

31.     In turn, dealers are required to report their sales to FCA, connect their computer networks with that of FCA's, submit to the training of their sales and technical personnel, use FCA's supplied computer software, and establish and maintain service departments within the FCA dealerships that use and utilize FCA approved parts and services.

32.     Dealers benefit from the marketing and advertising that FCA provides and also are required to display FCA logos on signs, literature, brochures, and various marketing material, and on various products displayed within the FCA dealerships and/or that are advertised publicly through various mediums by dealers.

33.     Plaintiffs are further informed and believe and thereupon allege that dealerships impose legal obligations upon FCA with respect to warranty repairs that they sell and issue service contracts that FCA administers.  Beyond this, FCA exercises substantial control over its dealers.  To that end, FCA provides financial incentives to dealer employees, selects the locations where dealerships can be maintained or operated, requires dealerships to comply with FCA's policies and procedures, and effectively controls dealership profits by allocating the number of FCA automobiles to each dealer.  FCA does not receive payment for the cars that are sold until the dealerships sell them because the dealers are selling those cars on FCA's behalf pursuant to a "floor plan."  Dealers also bear FCA's brand names, use

its logos and advertising, bear FCA's name on warranty repair orders, and enjoy a franchise to sell FCA's products, including the Defective Class Vehicles.

34.    At all times material, FCA dealers are required by Defendant to follow FCA's rules and policies with respect to how they conduct all aspects of their business, including honoring FCA's warranties and/or otherwise providing warranties, and even the servicing of Defective Class Vehicles.  FCA's effective management and control over its agents and dealers is ubiquitous.  It covers virtually every aspect of a car dealer's business including the performance of warranty diagnosis and repairs which must be done in accordance with FCA's procedures and policies, the use of parts and tools which are provided by FCA or approved by Defendant, and even informing FCA when it is discovered that unauthorized parts have been installed in one of Defendant's vehicles which the dealer repairs or inspects.

35.    FCA further requires dealers to provide it with monthly statements and records pertaining, in part, to their sales and servicing of FCA vehicles.

36.    FCA provides technical services, bulletins, and messages to its dealers. These announcements or pronouncements detail chronic defects presented in product lines and repair procedures that must be followed for chronic defects. Related to this, FCA provides dealers with trained service and repair consultants

with whom the dealers are required by FCA to consult when they are unable to correct the vehicle defect on their own.

37.    In addition, it is incumbent on dealers, as required by FCA, to notify FCA in every instance when a car is sold or put into warranty service.

**B.    The Hybrid Propulsion Defect**

38.    FCA acknowledges by its February 14, 2022 notification of a safety recall sent to the National Highway Traffic Safety Administration ("NHTSA"), that a defect in the Hybrid Propulsion System can cause the Defective Class Vehicles to spontaneously burst into flames.  Defendant also admits that "[a] vehicle fire can occur when parked, even with the vehicle in the off position."

39.    FCA failed to adequately research, design, test and manufacture the Defective Class Vehicles before warranting, advertising, promoting, marketing, and selling them as suitable and safe for use in an intended and reasonably foreseeable manner by consumers.

40.    Although FCA claims that the root cause of the Hybrid Propulsion Defect is unknown, the nature of the fires and the fact they can occur even while the vehicle is not running, strongly suggests that the defect is connected to the high-voltage lithium battery that powers the electric propulsion of the Defective Class Vehicles.

41.     The high-voltage batteries in the Defective Class Vehicles are 16-kWh lithium-ion batteries made by LG Chem (now LG Energy Solution, or "LGES").

42.     LGES also made the batteries that allegedly caused fires in GM's Bolt EV and Bolt EUV cars built from 2017 to 2022. As a result, LGES agreed to pay GM $1.9 billion for the costs of a recall of those GM cars.

43.     In addition, LGES made the batteries used in 2017 to 2020 Hyundai vehicles that were recalled in February 2021 to address a battery defect that posed a fire risk.

44.     LGES issued the following statement in response to FCA's recall of the Defective Class Vehicles:

> There is no confirmed root cause of fires in the STLA vehicles that is subject to the recall, or proof directly linking to the battery, as mentioned in its statement. Considering STLA's statement, LGES has no further comment.

45.     So far, FCA has only recalled the 2017 and 2018 Pacifica Hybrids. However, FCA has continuously sold Pacifica Hybrids to this day, and continues to use LGES 16-kWh lithium-ion batteries.

46.     Accordingly, Plaintiffs' counsel continues to investigate whether additional model years of the Pacifica Hybrid are also plagued with the Hybrid Propulsion Defect.

**C.     The Hybrid Propulsion Defect causes sudden fires and explosions in the Defective Class Vehicles**

47. On information and belief, FCA knew or should have known about the Hybrid Propulsion Defect long before it disclosed the problem, as evidenced by: (1) consumer complaints lodged with NHTSA and elsewhere online; (2) consumer complaints lodged with FCA directly; and (3) other similar fire issues in GM Bolts and Hyundai vehicles that (like the Defective Class Vehicles) use LGES batteries for electric propulsion.

48. No later than fall 2018, Pacifica owners and lessees began complaining that their Defective Class Vehicles suddenly caught fire.

49. All vehicle manufacturers, including FCA, are required by law to routinely monitor and analyze NHTSA complaints to determine whether vehicles or components should be recalled due to safety concerns. Thus, FCA has knowledge of all NHTSA complaints filed concerning the vehicles it manufacturers, including the Defective Class Vehicles. *See* TREAD Act, Pub. L. No. 106-414, 114 Stat. 1800 (2000).

50. Complaints submitted to FCA and to NHTSA via Vehicle Owner Questionnaires ("VOQ") reveal multiple instances of Defective Class Vehicles catching on fire.

51. As one Affected Vehicle owner stated in a complaint to NHTSA in 2018, only "[t]wo weeks" after purchasing a new Pacifica, "the engine started smoking and caught fire while I was driving my family" on a Washington highway.

D.      **FCA Manufactured and Sold Dangerously Defective Class Vehicles to Consumers that it Marketed as Safe**

52.    The Defective Class Vehicles are "plug-in" hybrid vehicles. Typically, plug-in hybrids are viewed as being better than ordinary hybrid vehicle because they can be charged and driven on affordable electricity.  A hybrid plug-in is powered by an electric motor and uses an internal combustion engine as its back-up in the event that the motor's battery is no longer able to fuel the vehicle.

53.    Hence, the ability of the Chrysler Pacific PHV to recharge its own battery by simply plugging it in to a recharging station is a significant advantage and one of the primary considerations for purchasers or lessees of electric vehicles.  This feature enables consumers to save money and, safe emissions which is one of the fundamental factors that has advanced the electric car industry:  environmental concerns.  According to Consumer Report 71% of respondents when surveyed indicated that they would likely chiefly charge their vehicles at home.  Preston, Benjamin.  "Consumer Reports Survey Shows Strong Interest in Electric Cars." *Consumer Reports*.

54.    FCA represented that the Pacific Hybrid was "America's first-ever Hybrid minivan" averaging 84 mpg.  The ability to run an electric power was a major selling point and the ability to power the car by plugging it in to a recharging station was also a significant feature.

55.    FCA's sales brochure for the 2018 Pacifica hybrid represented a "mission for reducing emissions" while in that same brochure touted the electric driving ability of the Defective Class Vehicles.

56.    Defendant informed and represented to consumers that the 2017 Chrysler Pacifica PHV minivan was well suited for "family utility" and a "family's active lifestyle."  FCA emphasized that the minivan was a "family room on wheels" and reassured consumers that "your family's safety and security are what matters most."

57.    FCA touted the 2017 Chrysler Pacifica PHV as having "100+ standard and available safety and security features," while representing in its advertising literature and materials that "paramount to helping protect you and your family is over 100 standard and available safety and security features that automatically react in the blink of an eye."

58.    Defendant stated and advertised to consumers that the 2018 Chrysler Pacifica PHV minivan was "here to serve your real life with care as the most family friendly minivan in its class," while emphasizing the 2018 minivan's many safety and security features. Beyond noting FCA's mission for reducing emissions, consumers were also informed that the vehicle would help them achieve "savings," and were told that the 2018 Chrysler Pacifica PHV had a "33 mile electric driving

range" and was "less dependent on gas, helping you produce less emissions for a greener planet."

59.     FCA's marketing campaign was especially prominent with respect to California consumers – where it is estimated that 40% of all hybrids are sold in the State of California – the biggest minivan market in the country.  FCA boasted that the Chrysler Pacifica hybrid is the "official family vehicle for California," according to Tim Kuniskis of FCA.

60.     FCA's sales brochures were replete with pictures of children in the Defective Class Vehicles in addition to describing an extensive set of safety features. One of its brochures for the 2018 Pacifica stated that "[y]our travels will inspire while ensuring the wellbeing of all your beings with over 100 standard and available safety security features."

61.     In truth, and contrary to FCA's representations, there have been multiple instances of Defective Class Vehicles catching on fire.

62.     Complaints have been reported to NHTSA, including, for example, those below among many others:

> June 15, 2019 NHTSA ID NUMBER: 1220341
> Components:     ELECTRICAL      SYSTEM,      ENGINE,
> FUEL/PROPULSION SYSTEM
> NHTSA ID Number:  11220341
> Incident Date June 15, 2019
> Consumer Location FORTH WORTH, TX
> Vehicle Identification Number 2C4RC1N74JR****

Summary of Complaint:  PHEV VAN WAS CHARGING OVERNIGHT WHILE PLUGGED INTO HOUSE OUTLET (110V) USING MANUFACTURER SUPPLIED CHARGING CABLE.  AT AROUND 7 AM WE HEARD AN EXPLOSION AND FOUND THE VAN BURNING IN OUR DRIVEWAY. VEHICLE AS QUICKLY ENGULFED IN FLAMES.  FIRE TRUCK PUT IT OUT AFTER ARRIVING (~5-6 MINUTES, I THINK).  NO ONE WAS INJURED, IN OR NEAR THE CAR WHEN IT HAPPENED.  A NEST CAMERA ACROSS THE STREET SHOWED THAT THE VEHICLE WAS SMOKING PRIOR T OTHE EXPLLSION.  *BF*JB*DT*DT*DT INFORMATION REDACTED PURSUANT TO THE FREEDOME OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6).  *JB *TR 1 Affected Product?  CHRYSLER PACIFICA HYBRID 2018

January 14, 2020 NHTSA ID NUMBER: 11299263
Components: ELECTRICAL SYSTEM NHTSA ID Number: 11299263
        Incident Date September 20, 2019
        Consumer Location KALAMAZOO, MI
        Vehicle Identification Number 2C4RC1N73JR****
Summary of Complaint: AS OF 1/14/20 CHRYSLER AND KEVIN PIKE FROM NEDERVELD ARE STILL INVESTIGATING. ON 9/20 AROUND 5AM WE WERE AWOKE TO AN EXPLOSION SOUND. IT WAS OUR GARAGE DOOR BEING BLOWN TO THE STREET AND THE INTERIOR GARAGE DOOR BEING BLOWN INWARDS. THIS WAS DUE TO A FIRE THAT STARTED IN OUR GARAGE CONFIRMED TO HAVE STARTED WHERE THE PACIFICA WAS PARKED. THE PACIFICA HAD BEEN PLUGGED IN TO A JUICEBOX CHARGER PROFESSIONALLY WIRED WITH A DEDICATED 220V OUTLET SINCE AROUND 7PM THE PREVIOUS EVENING. I BELIEVE SOMETHING MALFUNCTIONED WITH THE CAR'S ELECTRIC BATTERY CAUSING IT TO START A FIRE THAT BUILT UP IN THE GARAGE AND EVENTUALLY CAUSED A TOTAL LOSS OF OUR HOME

20

AND EVERYTHING INSIDE IT. WE DID NOT HAVE ANY
OTHER FLAMMABLE OR EXPLOSIVE SUBSTANCES IN
THE GARAGE BESIDES A 1 GALLON GAS CONTAINER
ON THE OTHER SIDE OF THE GARAGE CONFIRMED TO
NOT BE NEAR THE START OF THE FIRE. THE VEHICLE
HAD BEEN COMPLETELY DRAINED OF BATTERY THE
PREVIOUS DAY, PLUGGED IN AND WAS CHARGING
OVERNIGHT. THIS DESCRIPTION ALSO MATCHES THE
SAME DESCRIPTION 2 OTHER FAMILIES HAVE POSTED
ONLINE OF THEIR PACIFICA CATCHING FIRE BUT
THEIR VEHICLES WERE PARKED OUTSIDE SO DID NOT
BURN DOWN THEIR HOMES AND NO INVESTIGATION
WAS CONDUCTED. *DT*JB*DT *DT*JB*DT*JB*DT THE
CONSUMER PROVIDED PHOTOS. *TR

1 Affected Product: CHRYSLER    PACIFICA HYBRID 2018

63.    FCA has been aware of the serious risk of explosion and fire in the

Defective Class Vehicles.  Despite such knowledge it failed to remedy the problem

and only recently issued its 2022 Recall.

64.    FCA's Technical Safety and Regulatory Compliance organization

began investigating "a potential trend in fires" in certain Pacifica Hybrids on August

31, 2021.  It bought back two vehicles "for origin and cause investigation," in

September 2021 and January 2022, but claimed that "[t]he cause of these fires is

under investigation."  FCA has been "aware of ten additional fires," the "cause of

which is under investigation."  FCA, received twelve field reports concerning these

fires between "April 23, 2019, to December 14, 2021."

65.     However, it was not until February 6, 2022 that FCA's Vehicle Regulations Committee decided "to conduct a voluntary safety recall of the affected vehicles." **Exhibit A**. Still FCA has not yet remedied the defect, electing instead to advise the owners and lessees of the Defective Class Vehicles "to refrain from charging them, and to park them away from structures and other vehicles." **Exhibit A**. FCA should, but has not, offered to buy back the vehicles and has not even offered to provide loaner vehicles until such time as it can fix the problem.

66.     This is not the first time that FCA has been forced to recall Pacifica Hybrids that were at risk of igniting.  FCA previously recalled over 10,000 2017 and 2018 Pacifica Plug-In Hybrid minivans in 2018 for a fire issue related to the vehicle's fuel system, stating that "[a]fter the vehicle has been operating in PHEV propulsion mode, the gas-fueled engine may not restart properly resulting in unburned fuel entering the exhaust catalyst."  (Recall No. 18V740000).

67.     There was a recall of Pacifica Plug-In Hybrid minivans in 2020 due to a fire risk resulting from a corroded electrical connection involving the Pacifica's 12-volt battery system (Recall No. 20V334000).  At that time – similar to the current recall – FCA advised Pacifica hybrid owners to park their vehicles outdoors and away from other vehicles.

**E.     The Proposed Recall is Insufficient to Remedy the Harm to Defective Class Vehicle Owners and Lessees**

68.     On February 11, 2022, more than three years after the first known incident of fire in the Class Vehicles, and more than six years after FCA US, LLC began manufacturing and distributing Defective Class Vehicles, FCA announced its intent to recall nearly 20,000 vehicles that "may experience a fire, even with the ignition in the 'OFF' mode," which can result in "increased risk of occupant injury and/or injury to persons outside the vehicle, as well as property damage." **Exhibit A**.

69.     FCA notified consumers that a "remedy is under development" and the "root cause is unknown." **Exhibit A**. Defendant also notified consumers that:

> A remedy is under development. Until further notice, the company is advising owners of these hybrid vehicles to refrain from recharging them, and to park them away from structures and other vehicles.
>
> FCA US has a longstanding policy and practice of reimbursing owners who have incurred the cost of repairing a problem that subsequently becomes the subject of a field action. To ensure consistency, FCA US, as part of the owner letter, will request that consumers send the original receipt and/or other adequate proof of payment to the company for confirmation of the expense.

**Exhibit A**.

70.     This so-called "fix" leaves consumers with a vehicle that is nearly useless and at risk of immediate fire-resulting in harm to Class Vehicle owners and lessees.

71.    FCA has been aware of the unexpected fires since at least 2020, the date of its first fire-related recall of 27,634 Chrysler Pacifica PHEVs. Even after the 2020 recall, fires are continuing to occur.

72.    Defendant's knowledge of the unexpected fires, and its subsequent inaction, has resulted in harm to Plaintiffs and Class Members.

## V.    TOLLING OF THE STATUTE OF LIMITATIONS

### A.    Discovery Rule Tolling

73.    Because FCA concealed the existence of the Hybrid Propulsion Defect, Class members had no way of knowing about the unreasonable fire risk of the Defective Class Vehicles.

74.    Within the period of any applicable statutes of limitation, Plaintiffs and members of the proposed Classes could not have discovered through the exercise of reasonable diligence that FCA was concealing the conduct complained of herein.

75.    Plaintiffs and the other Class members did not discover, and did not know of, facts that would have caused a reasonable person to suspect that FCA did not report information within its knowledge to federal and state authorities, its dealerships, or consumers; nor would a reasonable and diligent investigation have disclosed that FCA had concealed information about the unreasonable fire risk of

the Defective Class Vehicles, which was discovered by Plaintiffs only shortly before this action was filed.

76.    For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule with respect to claims as to the Defective Class Vehicles.

**B.    Fraudulent Concealment Tolling**

77.    All applicable statutes of limitation have also been tolled by FCA's knowing and active fraudulent concealment and denial of the facts alleged herein throughout the period relevant to this action.

**C.    Estoppel**

78.    FCA was under a continuous duty to disclose to Plaintiffs and the other Class Members the true character, quality, and nature of the fire risk of the Defective Class Vehicles.

79.    FCA knowingly, affirmatively, and actively concealed or recklessly disregarded the true nature, quality, and character of the fire risk of the Defective Class Vehicles.

80.    Based on the foregoing, FCA is estopped from relying on any statutes of limitations in defense of this action.

## VI.   CLASS ALLEGATIONS

81.     Plaintiffs bring this action on behalf of themselves and as a class action, pursuant to the provisions of Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of the following classes:

> **Nationwide Class:** All persons or entities who purchased or leased one or more model year 2017-2018 Chrysler Pacifica Hybrid minivans (the "Defective Class Vehicles").
>
> **California Class:** All persons or entities in the state of California who purchased or leased one or more model year 2017-2018 Chrysler Pacifica Hybrid minivans (the "Defective Class Vehicles").
>
> **Massachusetts Class:** All persons or entities in the state of Massachusetts who purchased or leased one or more model year 2017-2018 Chrysler Pacifica Hybrid minivans (the "Defective Class Vehicles").

82.     Plaintiffs assert claims under the federal law or the law of each state as set forth below.

83.     Excluded from each Class are individuals who have personal injury claims resulting from the fires or explosions caused by the Defective Class Vehicles. Also excluded from the Class are FCA and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; the Judge to whom this case is assigned and his/her immediate family; and Plaintiffs' Counsel. Plaintiffs reserve the right to revise the Class definition based upon information learned through discovery.

84.    Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

85.    This action has been brought and may be properly maintained on behalf of the Classes proposed herein under Federal Rule of Civil Procedure 23.

86.    **Numerosity:** Federal Rule of Civil Procedure 23(a)(1): The members of each Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. For purposes of this complaint, Plaintiffs allege that there are estimated to be 16,700 or more Defective Class Vehicles in the Nationwide Class. The precise number of Class members is unknown to Plaintiffs but may be ascertained from FCA's books and records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

87.    **Commonality and Predominance**: Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3): This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

a)      Whether FCA engaged in the conduct alleged herein;

b)      Whether the Hybrid Propulsion Defect creates an unreasonable risk of fires in the Defective Class Vehicles;

c)      When FCA first knew about the Hybrid Propulsion Defect;

d)      Whether FCA designed, manufactured, marketed, and distributed the Defective Class Vehicles with defective high-voltage batteries;

e)      Whether FCA's conduct renders it liable for breach of the implied warranty of merchantability;

f)      Whether FCA has been unjustly enriched at the expense of Plaintiffs and the Classes;

g)      Whether Plaintiffs and the other Class members overpaid for their vehicles at the point of sale; and

h)      Whether Plaintiffs and the other Class members are entitled to damages and other monetary relief and, if so, in what amount.

88.    **Typicality**: Federal Rule of Civil Procedure 23(a)(3): Plaintiffs' claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through FCA's wrongful conduct as described above.

89.    **Adequacy**: Federal Rule of Civil Procedure 23(a)(4): Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other members of the Classes they seek to represent; Plaintiffs have

retained counsel competent and experienced in complex class action litigation; and Plaintiffs intend to prosecute this action vigorously. The Classes' interests will be fairly and adequately protected by Plaintiffs and their counsel.

90.     **Superiority**: Federal Rule of Civil Procedure 23(b)(3): A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against FCA, so it would be impracticable for the members of the Classes to individually seek redress for FCA's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

# VII.  CLAIMS

## A.    Nationwide Claim

### COUNT I

### VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT
### 15 U.S.C. § 2301, *et seq.*
### (On behalf of Plaintiffs and the Nationwide Class)

91.    Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

92.    Plaintiffs bring this Count on behalf of a Nationwide Class (collectively for purposes of this Count, the "Magnuson-Moss Class").

93.    This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. § 1332(a)-(d).

94.    The Defective Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3). The Plaintiffs and Magnuson-Moss Class members are consumers because they are persons entitled under applicable state law to enforce against the warrantor the obligations of its implied warranties.

95.    FCA is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

96.    15 U.S.C. § 2301(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with an implied warranty.

97.    FCA provided Plaintiffs and Magnuson-Moss Class members with an implied warranty of merchantability in connection with the purchase or lease of their vehicles that is an "implied warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7). As a part of the implied warranty of merchantability, FCA warranted that the Defective Class Vehicles were fit for their ordinary purpose as safe motor vehicles and would pass without objection in the trade as designed, manufactured, and marketed, and were adequately contained, packaged, and labeled.

98.    FCA breached its implied warranties, as described in more detail above, and is therefore liable to Plaintiffs pursuant to 15 U.S.C. § 2310(d)(1). Without limitation, the Defective Class Vehicles share a common defect in that they are all equipped with a Hybrid Propulsion System that makes the vehicles susceptible to a risk of spontaneous ignition, causing an unreasonable risk of death, serious bodily harm and/or property damage to lessees and owners of the Defective Class Vehicles as well as their homes, passengers, and bystanders. This defect rendered the Defective Class Vehicles when sold/leased and at all times thereafter, unmerchantable and unfit for their ordinary use of hybrid driving. In fact, as a result of the defect, FCA specifically advises owners and lessees not to charge their batteries and not to drive the Defective Class Vehicles in electric mode.

99.    In its capacity as warrantor and a result of its monitoring obligations under the TREAD Act as discussed above, FCA had knowledge of the inherently defective nature of the Hybrid Propulsion System in the Defective Class Vehicles long before Class members knew of the defect. Any effort by FCA to limit the implied warranties in a manner that would exclude coverage of the Defective Class Vehicles is unconscionable, and any such effort to disclaim or otherwise limit such liability is null and void.

100.    Any limitations FCA might seek to impose on  its warranties are procedurally unconscionable. There was unequal bargaining power between FCA and Plaintiffs, as, at the time of purchase and lease,  Plaintiffs had no other options for purchasing warranty coverage other than directly from FCA.

101.    Any limitations FCA might seek to impose on  its warranties are substantively unconscionable. FCA knew that the Defective Class Vehicles  were defective  a n d  that the Defective Class Vehicles could spontaneously ignite when used as intended long before Plaintiffs and the Class.  FCA failed to disclose  this defect to Plaintiffs and the Class. Thus, enforcement of the durational limitations  on the warranties is harsh and shocks the conscience.

102.    Plaintiffs have had sufficient direct dealings with either FCA or  its agents (dealerships) to establish privity of contract between FCA and Plaintiffs. Nonetheless, privity is not required here because Plaintiffs are intended  third-party

beneficiaries of contracts between FCA and its dealers, and specifically, of FCA's implied warranties. The dealers were not intended to be the ultimate consumers of the Defective Class Vehicles and have no rights under the warranty agreements provided with the Defective Class Vehicles; the warranty agreements were designed for and intended to benefit consumers. Finally, privity is also not required because the Defective Class Vehicles are dangerous instrumentalities due to the aforementioned defect, as spontaneous fires present an unreasonable risk of death, serious bodily harm and/or property damage to lessees and owners of the Defective Class Vehicles as well as their homes, passengers, and bystanders.

103.   Pursuant to 15 U.S.C. § 2310(e), Plaintiffs are entitled to bring this class action and are not required to give FCA notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiffs pursuant to Rule 23 of the Federal Rules of Civil Procedure.

104.   Plaintiffs would suffer economic hardship if they returned their Defective Class Vehicles but did not receive the return of all payments made by them. Because FCA will not acknowledge any revocation of acceptance and immediately return any payments made, Plaintiffs have not re-accepted their Defective Class Vehicles by retaining them.

105.   The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum

of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit. Plaintiffs, individually and on behalf of all other Magnuson-Moss Class members, seek all damages permitted by law, including diminution in value of their vehicles, in an amount to be proven at trial. In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiffs and the other Magnuson-Moss Class members in connection with the commencement and prosecution of this action.

106.   Plaintiffs also seek the establishment of an FCA-funded program for Plaintiffs and Magnuson-Moss Class members to recover out-of-pocket costs incurred in attempting to rectify and/or mitigate the effects of the Hybrid Propulsion System Defect in their Defective Class Vehicles.

## COUNT II

### FRAUD BY CONCEALMENT
**(On behalf of Plaintiffs and the Nationwide Class (or alternatively State Subclasses))**

107.   Plaintiffs incorporate all of the preceding paragraphs by reference as though fully set forth herein.

108.   The Defendant made material omissions concerning a presently existing or past fact in that, for example, Defendant did not fully and truthfully

disclose to its customers the true nature of the Hybrid Propulsion Defect which was not readily discoverable by them until many years after purchase or lease of the Defective Class Vehicles. These facts, and other facts as set forth above, were material because reasonable people attach importance to their existence or nonexistence in deciding which vehicle to purchase.

109.   Defendant was under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated. One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

110.   In addition, Defendant had a duty to disclose these omitted material facts because they were known and/or accessible only to Defendant who has superior knowledge and access to the facts, and Defendant knew they were not known to or reasonably discoverable by Plaintiffs and the Class. These omitted facts were material because they directly impact the safety of the Defective Class Vehicles.

111.   Defendant was in exclusive control of the material facts and such facts were not known to the public or the Class. Defendant also possessed exclusive knowledge of the defects rendering Defective Class Vehicles inherently more dangerous and unreliable than similar vehicles.

112.   Defendant actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiffs and the Class to purchase the Defective Class Vehicles at a higher price for the vehicles, which did not match the vehicles' true value.

113.   Plaintiffs and the Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. The actions of Plaintiffs and the Class were justified.

114.   As a result of the concealment and/or suppression of the facts, Plaintiffs and the Class sustained damage. For those Class Members who elect to affirm the sale, these damages include the difference between the actual value of that which Plaintiffs and the Class paid and the actual value of that which they received, together with additional damages arising from the sales transaction, amounts expended in reliance upon the fraud, compensation for loss of use and enjoyment of the property, and/or lost profits. For those who want to rescind the purchase, they are entitled to restitution and consequential damages. Defendant's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of the rights and well-being of Plaintiffs and the Class in order to enrich Defendant. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

**UNJUST ENRICHMENT**
**(On behalf of Plaintiffs and the Nationwide Class (or alternatively State Subclasses))**

115.    Plaintiffs incorporate all of the preceding paragraphs by reference as though fully set forth herein.

116.    This Count is asserted for restitution based on Defendant's unjust enrichment. Plaintiffs assert this cause of action on behalf of themselves and the Class.

117.    As a result of the wrongful and fraudulent acts and omissions, as set forth above, pertaining to the design and/or manufacturing defect of their vehicles and the concealment of the defect, Defendant charged a higher price for its vehicles than the vehicles' true value and Defendant obtained monies which rightfully belong to Plaintiffs and other Class Members.

118.    Plaintiffs and Class Members conferred a benefit on FCA.

119.    Defendant enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs and other Class members, who paid a higher price for vehicles which actually had lower values. It would be inequitable and unjust for Defendant to retain these wrongfully obtained profits.

120.    Plaintiffs, therefore, seek an order establishing Defendant as a constructive trustee of the profits unjustly obtained, plus interest.

## COUNT IV

### NEGLIGENT MISREPRESENTATION
### (On behalf of Plaintiffs and the Nationwide Class (or alternatively State Subclasses))

121.    Plaintiffs incorporate all of the preceding paragraphs by reference as though fully set forth herein.

122.    Defendant overstated the utility and safety of Defective Class Vehicles by marketing the Defective Class Vehicles as having over 100 safety and security features to keep consumers safe, and as the most family friendly minivan in its class.

123.    Defendant's representations were not true because the Defective Class Vehicles are unsafe and unsuitable for any family.  Plaintiffs and the Class Members cannot safely park their Defective Class Vehicles at home or near buildings, nor can they plug them in due to a heightened risk of fire.

124.    Defendant had no reasonable grounds for believing the representations were true when it made them.

125.    The misrepresentations, nondisclosure, and/or concealment of material facts made by Defendant to Plaintiffs and the members of the Class, as set forth above, were intended by Defendant to mislead Plaintiffs and the Class Members.

126.    Plaintiffs and the Class Members reasonably relied on Defendant's misrepresentations, but were actually misled and deceived, and were induced by Defendant to purchase the Class Vehicles which they could not otherwise have purchased.

127.    Plaintiffs and Class Members' reliance was a substantial factor in causing them harm because they were required to stop using Defective Class Vehicles and fear immediate catastrophic injury to themselves, passengers of the Defective Class Vehicles, and people and property surrounding the Defective Class Vehicle.

128.    Plaintiffs and the Class Members justifiably relied on Defendant's misrepresentations and have been damaged thereby.

## COUNT V

### NEGLIGENCE
### (On behalf of Plaintiffs and the Nationwide Class (or alternatively State Subclasses))

129.    Plaintiffs incorporate all of the preceding paragraphs by reference as though fully set forth herein.

130.    Defendant had a duty to its consumers to exercise a degree of care that a reasonable person in the like position would exercise.  Defendant failed to do so. Among other things Defendant had a duty to follow industry custom and standards imposed by federal regulations, to assess the foreseeability and likelihood of an

injury, and to assess the seriousness and frequency of the injuries threatened by the Defective Class Vehicles.

131.  Defendant breached its duty to Plaintiffs and the Class Members. Among other things, and without limiting the generality of the foregoing, Defendant failed to (1) inspect its Defective Class Vehicles adequately, (2) to design Defective Class Vehicles properly, and (3) failed to test its Defective Class Vehicles adequately.

132.  Defendant's negligence was a substantial factor in causing Plaintiffs and Class Members to suffer economic, and potentially fatal harm as well as other damages to be proven at the time of the trial.

133.  Plaintiffs and Class Members were harmed because they were in fear and at risk of immediate catastrophic injury to themselves and passengers of the Class Vehicles, and people and property surrounding the Defective Class Vehicle.

134.  As a direct and legal result of the wrongful acts and omissions of Defendant, Plaintiffs and Class Members were harmed.

**C.    State-Specific Claims**

<u>**COUNT VI**</u>

**BREACH OF THE IMPLIED WARRANTY OF
MERCHANTABILITY
G.L.C. 106, § 2-314
(On behalf of Plaintiff Olson and the Massachusetts Class)**

135.   Plaintiff Olson and the Massachusetts Class incorporate all of the preceding paragraphs by reference as though fully set forth herein.

136.   Plaintiff brings this action on behalf of himself and the Massachusetts Class.

137.   FCA is a "merchant" with respect to motor vehicles under the G.L.C. 106, § 2-104(1).

138.   Under G.L.C. 106, § 2-314, a warranty that the Defective Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs and the Massachusetts Class members purchased or leased them.

139.   At the time Defendant marketed, distributed, and sold the Defective Class Vehicles for use by Plaintiff Olson and members of the Massachusetts Class, Defendant knew of the use for which the Defective Class Vehicles were intended and impliedly warranted the Defective Class Vehicles to be of a certain quality.

140.   Defendant engaged in and carried out a common scheme of marketing, distributing, and selling the Defective Class Vehicles by falsely and deceptively representing that the Defective Class Vehicles were safe, without defect, and fit for their ordinary and intended use.

141.   Defendant's representations and warranties are false, misleading, and inaccurate in that the Defective Class Vehicles are unsafe, unreasonably

dangerous, and unfit for their ordinary and intended purpose as a result of the Hybrid Propulsion Defect.

142.    Without limitation, the Defective Class Vehicles share a common defect in that they are all equipped with a Hybrid Propulsion System that makes the vehicles susceptible to a risk of spontaneous ignition, causing an unreasonable risk of death, serious bodily harm and/or property damage to lessees and owners of the Defective Class Vehicles as well as their homes, passengers, and bystanders. This defect renders the Defective Class Vehicles when sold/leased and at all times thereafter, unmerchantable and unfit for their ordinary use of driving. In fact, as a result of the defect, FCA specifically advises owners and lessees not to charge their batteries and not to drive the Defective Class Vehicles in electric mode.

143.    The Defective Class Vehicles are subject to the Hybrid Propulsion Defect, which renders them unfit for their intended use such that Plaintiff Olson and the Massachusetts Class would not have purchased said vehicles had they known of the Hybrid Propulsion Defect.

144.    Plaintiffs and the other Massachusetts Class members were and are third-party beneficiaries to FCA's contracts with FCA-certified/authorized retailers who sold or leased the Defective Class Vehicles to Plaintiff and the Massachusetts Class.

145.   In addition, or in the alternative, Plaintiff and the Massachusetts Class members directly relied on FCA's advertising, as alleged above.

146.   The damages suffered by Plaintiff Olson and the Massachusetts Class arose from the reasonably anticipated use of the Defective Class Vehicles.

147.   As a result of Defendant's breach of the implied warranty of merchantability, Plaintiff Olson and the Massachusetts Class have suffered, and will continue to suffer, the loss of use of their automobiles, emotional distress, and consequential damages and thus are entitled to compensatory damages and equitable and declaratory relief according to proof.

## COUNT VII

**VIOLATION OF THE UNFAIR BUSINESS PRACTICES ACT**
**California Business & Professions Code Section 17200, *et seq.***
**(On behalf of Plaintiffs Elias and Michele Ramirez and the California Class)**

148.   Plaintiffs Elias and Michele Ramirez and the California Class incorporate all of the preceding paragraphs by reference as though fully set forth herein.

149.   California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq.*) is designed to protect consumers from unlawful, unfair or fraudulent business acts or practices, including the use of any deception, fraud, misrepresentation, or the concealment, suppression or omission of any material fact.

150.   At times, places, and involving participants known exclusively to Defendant and third parties and concealed from Elias and Michele Ramirez, Defendant has engaged in unlawful, unfair, and fraudulent business practices in violation of the UCL as set forth above.  Defendant's business practices, set forth in this Complaint, are deceptive and violate Section 17200 because its practices are likely to deceive consumers in California.

151.   Defendant overstated the utility and safety of Defective Class Vehicles by marketing the Defective Class Vehicles as having over 100 safety and security features to keep consumers safe, and as the most family friendly minivan in its class, knowing that such representations were false.

152.   Defendant knew or should have known that false and misleading statements about the Defective Class Vehicles were being made and likely to mislead the public.  Defendant made or disseminated false and misleading statements or caused false and misleading statements to be made or disseminated.

153.   The misrepresentations and omissions alleged herein are **fraudulent**, and thus amount to unfair competition as set forth by the Unfair Competition Law, in that Defendant pioneered a deceptive marketing campaign to overstate the safety and security features of the Defective Class Vehicles.

154.   Defendant's conduct and the harm it caused, and continues to cause, is not reasonably avoidable by Plaintiffs Elias and Michele Ramirez and members

of the California Class. Due to its deceptive acts and omissions, Defendant knew or had reason to know that Plaintiffs and members of the California Class would not have reasonably known or discovered the risk of spontaneous combustion and inability to freely park their cars.

155. The misrepresentations and omissions alleged herein are **<u>unlawful</u>**, and thus amount to unfair competition as set forth by the Unfair Competition Law, in that they violate, among other things, California Business and Professions Code § 17500, and several other common law violations, including, deceit, fraud and misrepresentation, and unjust enrichment. These unlawful practices include, but are not limited to:

a. Defendant misrepresented the source, sponsorship, approval, or certification of goods or services in violation of the Consumer Legal Remedies Act, Civ. Code Section 1770(a)(2);

b. Defendant represented that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have in violation of the Consumer Legal Remedies Act, Civ. Code Section 1770(a)(5);

c. Defendant represented that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another in violation of the Consumer Legal Remedies Act, Civ. Code

Section 1770(a)(7);

d. Defendant made or disseminated, directly or indirectly, untrue, false, or misleading statements about the utility and safety of Class Vehicles, or causing untrue, false, or misleading statements about the utility and safety of Defective Class Vehicles to be made or disseminated to the general public in violation of the UCL.

156.  As set forth above, Defendant misrepresented the utility and safety of Defective Class Vehicles.  Defendant disseminated these untrue and misleading misrepresentations with the intent to boost the sales and profits of Defendant.

157.  The misrepresentations and omissions alleged herein are **<u>unfair</u>**, and thus amount to unfair competition as set forth by the Unfair Competition Law, in that they are immoral, oppressive, unscrupulous, and substantially injurious to consumers.  The injury to Plaintiffs Elias and Michele Ramirez and members of the California Class caused by Defendant's actions, greatly outweighs any countervailing benefits to consumers or competition under all of the circumstances.

158.  As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits, which it would not have received if it had not engaged in the violations of the UCL described in this complaint.

159.   As a direct and proximate result of the foregoing acts and practices, Defendant has obtained an unfair advantage over similar businesses that have not engaged in such practices.

160.   As a direct and proximate cause of Defendant's violations of the Unfair Competition Law, Plaintiffs Elias and Michelle Ramirez and members of the California Class suffered an injury and monetary harm because their Defective Class Vehicles are at heightened risk of fire, and they cannot freely park their vehicle.

161.   Plaintiffs Elias and Michelle Ramirez and members of the California Class have been damaged by said practices.  Pursuant to California Business and Professions Code §§ 17200 and 17203, Plaintiffs Elias and Michelle Ramirez, on behalf of themselves and all others similarly situated, seek relief as prayed for below.

162.   As a result of Defendant's violations of the Business & Professions Code section 17200, *et seq.,* Plaintiffs Elias and Michelle Ramirez and members of the California Class are entitled to equitable relief in the form of full restitution.

163.   Plaintiffs Elias and Michelle Ramirez and members of the California Class also seek and order enjoining Defendant from continuing its unlawful business practices and from such future conduct.

## COUNT VIII

**VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW**
**California Business & Professions Code Section 17500, *et seq.***
**(On behalf of Plaintiffs Elias and Michelle Ramirez and the California Class)**

164.    Plaintiffs Elias and Michelle Ramirez and the California Class re-allege and incorporate by reference each of the allegations contained in the preceding paragraphs of this Complaint as though fully alleged in this Cause of Action.

165.    Business and Professions Code Section 17500, *et seq.*, also known as California False Advertising Law (FAL), makes it unlawful for a business to make, disseminate, or cause to be made or disseminated to the public "any statement, concerning . . . real or personal property . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

166.    As alleged above, at times, places, and involving participants known exclusively to Defendant, Defendant violated the FAL by making and disseminating false or misleading statements about the utility and safety of Defective Class Vehicles, or by causing false or misleading statements about the utility and safety of Defective Class Vehicles to be made or disseminated to the public.

167.   Defendant's marketing scheme, set forth in this Complaint, is false and deceptive and violate Section 17500 because Defendant, in furtherance of the scheme, made misrepresentations and omissions regarding the safety and utility of Defective Class Vehicles to deceive consumers.

168.   Defendant overstated the utility and safety of Defective Class Vehicles by marketing the Defective Class Vehicles as having over 100 safety and security features to keep consumers safe, and as the most family friendly minivan in its class, knowing that such representations were false.

169.   Defendant disseminated materially misleading advertisements and deceptive information in print, online, and television formats, and omitted material information, as discussed throughout the complaint, for purposes of inducing customers to purchase the Defective Class Vehicles, in violation of California Business and Professions Code § 17500, *et seq*.

170.   At the time it made or disseminated its false and misleading statements or caused these statements to be made or disseminated, Defendant knew or should have known that the statements were false and misleading and therefore likely to deceive the public.  In addition, Defendant knew and should have known that its false and misleading advertising created a false or misleading impression of the risks and benefits of purchasing a Defective Class Vehicle.

171.   As a result of Defendant's violations, Plaintiffs Elias and Michelle Ramirez and California Class Members are entitled to equitable relief in the form of full restitution of all monies paid for the sales price of the Defective Class Vehicles, diminished value of the Defective Class Vehicles, and/or disgorgement of the profits derived from Defendant's false and misleading advertising.

172.   Plaintiffs Elias and Michelle Ramirez and members of the California Class also seek an order enjoining Defendant from such future conduct.

## COUNT IX

**VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT**
**California Civil Code Section 1750, *et seq.***
**(On behalf of Plaintiffs Elias and Michelle Ramirez and the California Class)**

173.   Plaintiffs Elias and Michelle Ramirez and the California Class re-allege and incorporate by reference each of the allegations contained in the preceding paragraphs of this Complaint as though fully alleged in this Cause of Action.

174.   The following definitions come within the meaning of Consumer Legal Remedies Act (Cal. Civ. Code § 1750, et seq.):

175.   The members of the Class, all of whom purchased the Defective Class Vehicles manufactured and sold by FCA US, LLC are "consumers" (Cal. Civ. Code § 1761(d));

176.   Defendant FCA US, LLC is a "person" (Cal. Civ. Code § 1761(c));

50

177.   Plaintiffs Elias and Michelle Ramirez and each and every Class members' purchase of the Defective Class Vehicles constitute a "transaction" (Cal. Civ. Code § 1761(e)); and the Defective Class Vehicles are "goods" (Cal. Civ. Code § 1761(a)).

178.   Plaintiffs Elias and Michelle Ramirez and California Class Members acquired, by purchase or lease Defective Class Vehicles for personal, family, or household purposes.

179.   Defendant overstated the utility and safety of Defective Class Vehicles by marketing the Defective Class Vehicles as having over 100 safety and security features to keep consumers safe, and as the most family friendly minivan in its class, knowing that such representations were false.

180.   A reasonable consumer would consider these representations material and important in deciding whether to buy or lease Defective Class Vehicles.

181.   The acts and practices of Defendant as discussed throughout the Complaint, constitute "unfair or deceptive acts or practices" by Defendant, that are unlawful, as enumerated in section 1770(a) of the California Civil Code. These unlawful practices include, but are not limited to:

> a.   Defendant misrepresented the source, sponsorship, approval, or certification of goods or services in violation of the Consumer Legal Remedies Act, Civ. Code Section 1770(a)(2);

51

b. Defendant represented that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have in violation of the Consumer Legal Remedies Act, Civ. Code Section 1770(a)(5); and

c. Defendant represented that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another in violation of the Consumer Legal Remedies Act, Civ. Code Section 1770(a)(7).

182. Such misconduct materially affected the purchasing decisions of Plaintiffs Elias and Michelle Ramirez and the California Class Members. Defendant's representations were a substantial factor in Plaintiff's decision to purchase a Defective Class Vehicle.

183. Plaintiffs Elias and Michelle Ramirez and the California Class Members were harmed because they were required to stop using Defective Class Vehicles and fear immediate catastrophic injury to themselves and passengers of the Defective Class Vehicles, and people and property surrounding the Defective Class Vehicle.

184. Plaintiffs Elias and Michelle Ramirez and the members of the California Class seek restitution and injunctive relief pursuant to California Civil Code § 1780. Unless Defendant is enjoined from engaging in such wrongful

actions and conduct in the future, members of the consuming public will be further damaged by Defendant's conduct.

185.   Plaintiffs Elias and Michelle Ramirez and the California Class Members are entitled to equitable relief on behalf of the members of the Class, pursuant to Civil Code section 1780, subdivision (a)(2)(5), prohibiting Defendant from continuing to engage in the above-described violations of the CLRA. Plaintiffs Elias and Michelle Ramirez and the California Class Members further seek reasonable attorneys' fees under Civil Code section 1780(e). Plaintiffs Elias and Michelle Ramirez and the California Class Members seek restitution under Civil Code section 1780(a).

186.   Pursuant to Cal. Civ. Code section 1782(a), on March 31, 2022, Plaintiffs Elias and Michelle Ramirez sent a letter to FCA US, LLC notifying them of their CLRA violations and affording them the opportunity to correct their business practices and rectify the harm it caused.  Plaintiffs Elias and Michelle Ramirez sent the CLRA notice via certified main, return receipt requested, to FCA US, LLC's principal place of business.  This notice is attached to this Complaint as **Exhibit C**.  Should FCA US, LLC fail to correct its business practices or provide the relief requested within 30 days, Plaintiffs Elias and Michelle Ramirez will amend this Complaint to seek monetary damages under CLRA.

187.   The conduct of Defendant set forth herein was reprehensible and subjected Plaintiffs Elias and Michele Ramirez and the members of the California Class to cruel and unjust hardship in conscious disregard of their rights, constituting oppression.   Defendant's behavior evidences a conscious disregard for the safety of Plaintiffs Elias and Michelle Ramirez and California Class Members. Defendant's conduct was and is "despicable conduct" and constitutes "malice" under Section 3294 of the California Civil Code.   An officer, director, or managing agent of Defendant personally committed, authorized, and/or ratified the reprehensible conduct set forth herein.   Plaintiffs Elias and Michelle Ramirez will amend this cause of action to seek an award of punitive damages sufficient to penalize Defendant should their CLRA letter not be complied with fully.

## COUNT X

**BREACH OF EXPRESS WRITTEN WARRANTY**
**California Civil Code Sections 1791.2(a) & 1794)**
**(On behalf of Plaintiffs Elias and Michelle Ramirez and the California Class)**

188.   Plaintiffs Elias and Michelle Ramirez re-allege and incorporate by reference each of the allegations contained in the preceding paragraphs of this Complaint as though fully alleged in this Cause of Action.

189.   Defendant warranted to Plaintiffs Elias and Michelle Ramirez and Class Members through written statements and multi-media advertisements that the

Defective Class Vehicles would work safely and securely, and could be charged safely.

190.    The Defective Class Vehicles that Plaintiffs Elias and Michelle Ramirez and the California Class Members purchased from Defendant did not perform safely and securely, nor can be charged safely.

191.    Defendant breached this warranty by knowingly selling vehicles equipped with a defective product causing spontaneous combustion and fires.

192.    Defendant failed to repair the Defective Class Vehicles as required by the warranty.

193.    The failure of the Defective Class Vehicles to be as represented was a substantial factor in causing harm to Plaintiffs Elias and Michelle Ramirez and the California Class Members because they were required to stop using their Defective Class Vehicles and fear immediate catastrophic injury to themselves and passengers of the Defective Class Vehicles, and people and property surrounding the Defective Class Vehicle.

194.    Plaintiffs Elias and Michelle Ramirez and the California Class have been damaged as a direct and proximate result of Defendant's breaches in that the Defective Class Vehicles purchased by Plaintiffs Elias and Michelle Ramirez and the California Class Members were and are worth far less than what Plaintiffs Elias

and Michelle Ramirez and the California Class Members paid to purchase or lease them.

195.    The Defective Class Vehicles were defective as herein alleged at the time they left Defendant's factories, and the vehicles reached Plaintiffs Elias and Michelle Ramirez and California Class Members without substantial change in the condition in which they were sold.

196.    As a direct and proximate result of these breaches, Plaintiffs Elias and Michelle Ramirez and the California Class Members have suffered various injuries, including a diminution of value in the Defective Class Vehicles.

197.    Plaintiffs Elias and Michelle Ramirez and the California Class Members have been harmed by Defendant's failure to comply with its obligations under the implied warranty.  Plaintiffs Elias and Michelle Ramirez and the California Class Members have suffered an injury in fact and have suffered an economic loss by, *inter alia*, (1) purchasing a product they never would have leased or purchased; (2) leasing or purchasing an inferior product whose nature and characteristics render it of a lesser value than represented; (3) incurring costs for diminished resale value of the Defective Class Vehicles purchased or leased; (4) leasing and/or purchasing a product that poses a danger to the health and safety of the public; (5) including increased costs to repair the Defective Class Vehicles purchased, and (f) incurring costs for loss of use.  Accordingly, the Court should

issue an injunction restraining and enjoining Defendant from sending or transmitting false and misleading advertising to individuals or entities concerning the purported safety and quality of the Defective Class Vehicles from Defendant.

## COUNT XI

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**California Civil Code Sections 1791.1; 1792; 1794; and 1795.5**
**(On behalf of Plaintiffs Elias and Michelle Ramirez and the California Class)**

198.    Plaintiffs Elias and Michelle Ramirez and the California Class re-allege and incorporate by reference each of the allegations contained in the preceding paragraphs of this Complaint as though fully alleged in this Cause of Action.

199.    Plaintiff and the California Class members are "buyers" within the meaning of CAL. CIV. CODE § 1791(b).

200.    The Defective Class Vehicles are "consumer goods" within the meaning of CAL. CIV. CODE § 1791(a).

201.    FCA is the "manufacturer" of the Defective Class Vehicles within the meaning of CAL. CIV. CODE § 1791(j).

202.    Pursuant to CAL. CIV. CODE § 1792, the sale or lease of the Defective Class Vehicles were accompanied by Defendant's implied warranty of merchantability.  Pursuant to CAL. CIV. CODE § 1791.1, the duration of the

implied warranty is coextensive in duration with the duration of the express written warranty provided by Defendant, except that the duration is not to exceed one-year.

203.   Pursuant to CAL. CIV. CODE § 1791.1 (a), the implied warranty of merchantability means and includes that the Defective Class Vehicles will comply with each of the following requirements: (1) The Vehicle will pass without objection in the trade under the contract description; (2) The Vehicle is fit for the ordinary purposes for which such goods are used; (3) The Vehicle is adequately contained, packaged, and labelled; (4) The Vehicle will conform to the promises or affirmations of fact made on the container or label.

204.   Plaintiffs Elias and Michelle Ramirez and California Class Members bought or leased their Defective Class Vehicles from Defendant.

205.   At the time of purchase or lease, Defendant was in the business of selling or leasing Defective Class Vehicles and held itself out as having special knowledge or skill regarding Defective Class Vehicles.

206.   At the time of purchase, or within one-year thereafter, the Defective Class Vehicles contained or developed the defect and risk of spontaneous combustion of Defective Class Vehicles set forth above.  The existence of each of these issues constitutes a breach of the implied warranty because the Defective Class Vehicles (1) do not pass without objection in the trade under the contract description, (2) are not fit for the ordinary purposes for which such goods are used,

(3) are not adequately contained, packaged, and labelled, and (4) do not conform to the promises or affirmations of fact made on the container or label.

207.    The failure of Defective Class Vehicles to have the expected quality was a substantial factor in causing harm to Plaintiffs Elias and Michelle Ramirez and the California Class Members and they therefore bring this Cause of Action pursuant to CAL. CIV. CODE § 1794.

208.    Plaintiffs Elias and Michelle Ramirez and the California Class Members have been harmed by Defendant's failure to comply with its obligations under the implied warranty.  Plaintiffs Elias and Michelle Ramirez and the Class Members have suffered an injury in fact and have suffered an economic loss by, *inter alia*, (1) purchasing a product they never would have leased or purchased; (2) leasing or purchasing an inferior product whose nature and characteristics render it of a lesser value than represented; (3) incurring costs for diminished resale value of the Defective Class Vehicles purchased or leased; (4) leasing and/or purchasing a product that poses a danger to the health and safety of the public; (5) including increased costs to repair the Defective Class Vehicles purchased, and (f) incurring costs for loss of use.  Accordingly, the Court must issue an injunction restraining and enjoining Defendant from sending or transmitting false and misleading advertising to individuals or entities concerning the purported safety and quality of the Defective Class Vehicles from Defendant.

## VIII.  PRAYER FOR RELIEF

209.  **WHEREFORE**, Plaintiffs, on behalf of themselves and members of the respective classes, as appropriate, respectfully request that this Court:

(a)  determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class as defined above;

(b)  appoint Plaintiffs as representatives of the Nationwide Consumer Class and the Texas Consumer Class, as appropriate, and their counsel as Class counsel;

(c)  award all actual, general, special, incidental, statutory, punitive, and consequential damages and restitution to which Plaintiffs and members of the Classes are entitled under the claims and causes of action as alleged above, at this time;

(d)  award pre-judgment and post-judgment interest on any monetary relief;

(e)  grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Toyota to repair, recall, and/or replace the Defective Class Vehicles and to extend the applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiffs and Class Members with appropriate curative notice regarding the existence and cause of the Defect;

(f)     award reasonable attorneys' fees and costs; and

(g)     grant such further relief that this Court deems appropriate.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**


Date: April 6, 2022

By:     */s/ E. Powell Miller*
        E. Powell Miller
E. Powell Miller (P39487)
Sharon S. Almonrode (P33938)
**The Miller Law Firm PC**
950 W. University Dr., Ste. 300
Rochester, MI 48307
Telephone: (248) 841-2200
Facsimile: (248) 652-2852
epm@millerlawpc.com
ssa@millerlawpc.com

**BARRACK, RODOS, & BACINE**
Stephen R. Basser
Samuel M. Ward
600 W Broadway, Suite 900
San Diego, CA 92101
Telephone: (619)230-0800
Facsimile: (619) 230-1874
sbasser@barrack.com
sward@barrack.com

**BARRACK, RODOS & BACINE**
Jeffrey W. Golan
Two Commerce Square
2001 Market Street, Suite 3300
Philadelphia, PA  19103
Telephone: (215) 963-0600
jgolan@barrack.com

**EMERSON FIRM, PLLC**
John G. Emerson

61

2500 Wilcrest Drive, Suite 300
Houston, TX 77042
Telephone: (800) 551-8649
Facsimile: (501) 286-4659
jemerson@emersonfirm.com

Attorneys for Plaintiffs and the
Proposed Class